No. 14-1728

---

IN THE
**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

JAMES DILLON,
*Plaintiff-Appellee*,

v.

BMO HARRIS BANK, N.A., *et al.*,
*Defendants-Appellants*,

and

FOUR OAKS BANK & TRUST
*Defendant*.

---

Appeal from Order of the United States District Court for the
Middle District of North Carolina, No. 1:13-cv-00897-CCE (Eagles, J.)

---

**JOINT OPENING BRIEF OF DEFENDANTS-APPELLANTS**

---

Lucia Nale
Debra Bogo-Ernst
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

Kevin Ranlett
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendant-Appellant BMO Harris Bank, N.A.*

*[additional counsel on signature page]*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS**

No. __14-1728__      Caption: __Dillon v. BMO Harris Bank, N.A.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__BMO Harris Bank, N.A.__ who is __appellant__ makes the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?

☐YES ☒NO

2.      Does party/amicus have any parent corporations?          ☒YES ☐NO

If yes, identify all parent corporations, including grandparent and great-grandparent corporations: __BMO Harris Bank, N.A. is wholly-owned by BMO Financial Corp., a Delaware holding company that is not publicly traded. BMO Financial Corp. is wholly-owned by the Bank of Montreal, Toronto, Canada.__

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          ☐YES ☒NO

If yes, identify all such owners: __N/A__

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?

☐YES ☒NO

If yes, identify entity and nature of interest: __N/A__

5.      Is party a trade association? (amici curiae do not complete this question)

☐YES ☒NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member: __N/A__

6.      Does this case arise out of a bankruptcy proceeding?          ☐YES ☒NO

If yes, identify any trustee and the members of any creditors' committee: __N/A__

Signature: __/s/ Kevin Ranlett__                Date: __October 22, 2014__

Counsel for: __BMO Harris Bank, N.A.__

i

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS**

No.  14-1728        Caption:   Dillon v. BMO Harris Bank, N.A.

Pursuant to FRAP 26.1 and Local Rule 26.1,

 Generations Federal Credit Union    who is  appellant   makes the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?

☐YES ☒NO

2.      Does party/amicus have any parent corporations?            ☐YES ☒NO

If yes, identify all parent corporations, including grandparent and great-grandparent corporations:  N/A

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?            ☐YES ☒NO

If yes, identify all such owners:  N/A

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?

☐YES ☒NO

If yes, identify entity and nature of interest:  N/A

5.      Is party a trade association? (amici curiae do not complete this question)

☐YES ☒NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:  N/A

6.      Does this case arise out of a bankruptcy proceeding?            ☐YES ☒NO

If yes, identify any trustee and the members of any creditors' committee:  N/A

Signature:  /s/ Leslie Sara Hyman                        Date:  October 22, 2014

Counsel for:  Generations Federal Credit Union

ii

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS**

No. 14-1728        Caption: Dillon v. BMO Harris Bank, N.A.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Bay Cities Bank        who is appellant    makes the following disclosure:

1.    Is party/amicus a publicly held corporation or other publicly held entity?

☐YES ☒NO

2.    Does party/amicus have any parent corporations?        ☒YES ☐NO

If yes, identify all parent corporations, including grandparent and great-grandparent corporations: Florida Business Bancgroup, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?        ☐YES ☒NO

If yes, identify all such owners: N/A

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?

☐YES ☒NO

If yes, identify entity and nature of interest: N/A

5.    Is party a trade association? (amici curiae do not complete this question)

☐YES ☒NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member: N/A

6.    Does this case arise out of a bankruptcy proceeding?        ☐YES ☒NO

If yes, identify any trustee and the members of any creditors' committee: N/A

Signature: /s/ Michael P. Carey            Date: October 22, 2014

Counsel for: Bay Cities Bank

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENTS ........................................i

TABLE OF AUTHORITIES.............................................................vi

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUES ......................................................................3

STATEMENT OF THE CASE.................................................................5

    A.    Dillon's Counsel File A Wave Of Virtually Identical Putative Class Actions Across The Country, Including This Action..................5

    B.    The District Court Denies Defendants' Initial Motions To Enforce Dillon's Arbitration Agreements For Lack Of Evidence That They Were Authentic....................................................7

    C.    Defendants Obtain Declarations Authenticating Dillon's Arbitration Agreements And Renew Their Requests For Arbitration ....................................................................9

    D.    The District Court Deems Defendants' Renewed Motions Procedurally Barred....................................................11

SUMMARY OF ARGUMENT.................................................12

STANDARD OF REVIEW .................................................15

ARGUMENT .................................................17

I.    THE COURT BELOW ERRED BY REFUSING TO PERMIT DEFENDANTS TO RENEW THEIR MOTIONS TO ENFORCE DILLON'S ARBITRATION AGREEMENTS.................................................17

    A.    The FAA's Mandate That District Courts Resolve Challenges To The Existence Or Formation Of Arbitration Agreements Required The Court Below To Consider Defendants' Renewed Motions To Enforce Dillon's Arbitration Agreements ......................17

    B.    The District Court's Justifications For Subjecting The Renewed Arbitration Motions To Heightened Scrutiny Fail As A Matter Of Law ....................................................................24

# TABLE OF CONTENTS
## (continued)

**Page**

1.    Federal Rule of Civil Procedure 54(b) does not trump the FAA's requirement that courts entertain renewed arbitration motions once evidentiary questions about the existence or formation of the arbitration agreement have been answered ........................................................................24

2.    Parties cannot be required to prove the existence of the arbitration agreement at the outset of the case..........................27

3.    Defendants did not act unfairly or abusively by renewing their requests for arbitration......................................................30

II.    EVEN UNDER THE STANDARD APPLICABLE TO MOTIONS FOR RECONSIDERATION, THE DISTRICT COURT ERRED IN REFUSING TO ENTERTAIN THE RENEWED MOTIONS .....................32

    A.    Refusing To Consider Defendants' Renewed Motions To Enforce Dillon's Arbitration Agreements Would Result In A Manifest Injustice ........................................................................................33

    B.    The Court Below Disregarded BMO's Showing That Its New Evidence Of Dillon's Arbitration Agreement Was Previously Unavailable.........................................................................................37

CONCLUSION ........................................................................................40

REQUEST FOR ORAL ARGUMENT .................................................40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Achey v. BMO Harris Bank, N.A.*,
  2014 WL 4099139 (N.D. Ill. Aug. 19, 2014).......................................5

*Akeva, L.L.C. v. Adidas Am., Inc.*,
  385 F. Supp. 2d 559 (M.D.N.C. 2005)..........................................33, 37

*Al Rushaid v. Nat'l Oilwell Varco, Inc.*,
  757 F.3d 416 (5th Cir. 2014)........................................................29

*Alltel Commc'ns, LLC v. DeJordy*,
  675 F.3d 1100 (8th Cir. 2012) ...................................................9, 38

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
  326 F.3d 505 (4th Cir. 2003)......................................................25, 33

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*,
  96 F.3d 88 (4th Cir. 1996)........................................................28, 29

*Antonio v. SSA Sec., Inc.*,
  749 F.3d 227 (4th Cir. 2014)..........................................................26

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009).............................................................3, 30, 34

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ...............................................................17

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986).....................................................................25

*Bernal v. Sw. & Pac. Specialty Fin., Inc.*,
  2014 WL 1868787 (N.D. Cal. May 7, 2014)......................................20

*Booth v. BMO Harris Bank, N.A.*,
  2014 WL 3952945 (E.D. Pa. Aug. 11, 2014).......................................5

*Broughman v. Carver*,
  624 F.3d 670 (4th Cir. 2010)..........................................................35

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
    206 F.R.D. 78 (S.D.N.Y. 2002) ............................................................38

*Cole v. Cole*,
    633 F.2d 1083 (4th Cir. 1980) ...........................................................26

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991) ...............................................................31

*Cozza v. Network Associates, Inc.*,
    362 F.3d 12 (1st Cir. 2004) ..............................................................23

*Creighton v. Blockbuster Inc.*,
    2007 WL 1560626 (D. Or. May 25, 2007) .......................................22

*Darcangelo v. Verizon Commc'ns, Inc.*,
    292 F.3d 181 (4th Cir. 2002) ...........................................................31

*Darden v. Nationwide Mut. Ins. Co.*,
    796 F.2d 701 (4th Cir. 1986) ...........................................................26

*Elder v. BMO Harris Bank, N.A.*,
    2014 WL 1429334 (D. Md. Apr. 11, 2014) ........................................5

*ESAB Grp., Inc. v. Zurich Ins. PLC*,
    685 F.3d 376 (4th Cir. 2012) ...........................................................16

*Fort Sumter Tours, Inc. v. Babbitt*,
    66 F.3d 1324 (4th Cir. 1995) ...........................................................16

*Galeas v. FNU Walrath*,
    2012 WL 664927 (W.D.N.C. Feb. 29, 2012) ...................................32

*Gen. Assurance of Am., Inc. v. Overby-Seawell Co.*,
    893 F. Supp. 2d 761 (E.D. Va. 2012) ..............................................33

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ...........................................................................37

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Goldberg v. C.B. Richard Ellis, Inc.*,
2012 WL 6522741 (D.S.C. Dec. 14, 2012) ......................................................20

*Golden Eagle Canada Ltd. v. S.S. Marilia*,
1985 WL 5091 (S.D.N.Y. Dec. 19, 1985).........................................................22

*Gordon v. U.S. Bancorp*,
No. 13-cv-3005 (D. Minn. Apr. 21, 2014) ...........................................................5

*Graham v. BMO Harris Bank, N.A.*,
2014 WL 4090548 (D. Conn. July 16, 2014) .......................................................5

*Great Lakes Reinsurance (UK) PLC v. Sunset Harbour Marina, Inc.*,
2012 WL 6195149 (S.D. Fla. Dec. 12, 2012) ....................................................21

*Griffin v. Yellow Transp., Inc.*,
2007 WL 3120419 (D. Kan. Oct. 22, 2007) .......................................................21

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
716 F.3d 764 (3d Cir. 2013) ......................................................................19, 24

*Gunson v. BMO Harris Bank, N.A.*,
2014 WL 4472725 (S.D. Fla. Sept. 10, 2014) ......................................................5

*Healthkeepers, Inc. v. Richmond Ambulance Auth.*,
642 F.3d 466 (4th Cir. 2011) ...............................................................................35

*Hillick v. BMO Harris Bank, N.A.*,
No. 5:13-CV-1222 (N.D.N.Y. Dec. 16, 2013) .....................................................5

*Howard v. Ferrellgas Partners, L.P.*,
748 F.3d 975 (10th Cir. 2014)........................................................19, 24, 27, 28

*Hutchinson v. Staton*,
994 F.2d 1076 (4th Cir. 1993).......................................................................32, 37

*JPD, Inc. v. Chronimed Holdings, Inc.*,
539 F.3d 388 (6th Cir. 2008).......................................................................18, 29

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Koon v. United States*,
  518 U.S. 81 (1996) ................................................................................. 16, 35

*Labajo v. First Int'l Bank & Trust*,
  2014 WL 4090527 (C.D. Cal. July 9, 2014) .......................................... 5

*LaFleur v. Dollar Tree Stores, Inc.*,
  2014 WL 2121563 (E.D. Va. May 20, 2014) ......................................... 32

*Lee-Thomas v. Prince George's Cnty. Pub. Schs.*,
  666 F.3d 244 (4th Cir. 2012) .................................................................. 16

*Lucas v. Hertz Corp.*,
  875 F. Supp. 2d 991 (N.D. Cal. 2012) .................................................... 21

*MicroStrategy, Inc. v. Lauricia*,
  268 F.3d 244 (4th Cir. 2001) .................................................................. 16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ............................................................................... 17, 37

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ................................................................................... 18, 28, 40

*Moss v. BMO Harris Bank, N.A.*,
  2014 WL 2565824 (E.D.N.Y. June 9, 2014) .......................................... 5

*Netscape Commc'ns Corp. v. ValueClick, Inc.*,
  704 F. Supp. 2d 544 (E.D. Va. 2010) ..................................................... 33

*New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*,
  18 F.3d 1161 (4th Cir. 1994) .................................................................. 31

*Newark Bay Cogeneration P'ship, LP v. ETS Power Grp.*,
  2012 WL 4504475 (D.N.J. Sept. 28, 2012) ........................................... 21

*Noohi v. Toll Bros., Inc.*,
  708 F.3d 599 (4th Cir. 2013) .................................................................. 15

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Norfolk Fed'n of Bus. Dists. v. Dep't of Hous. & Urban Dev.*,
    932 F. Supp. 730 (E.D. Va. 1996) .......................................................................31

*Oblix, Inc. v. Winiecki*,
    374 F.3d 488 (7th Cir. 2004) ...............................................................................3

*Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*,
    2014 WL 4900363 (2d Cir. Oct. 1, 2014) ....................................................39, 40

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
    148 F.3d 396 (4th Cir. 1998) ..........................................................................16, 34

*Parm v. BMO Harris Bank, N.A.*,
    No. 13-cv-3326 (N.D. Ga. Sept. 30, 2014) ..........................................................5

*Passmore v. Discover Bank*,
    2011 WL 5086431 (N.D. Ohio Oct. 26, 2011) ...............................................36, 38

*Quazilbash v. Wells Fargo & Co.*,
    2010 WL 1643778 (N.D. Okla. Apr. 22, 2010) ...............................................20, 21

*Richards v. Ernst & Young, LLP*,
    744 F.3d 1072 (9th Cir. 2013) ............................................................................29

*Riley v. BMO Harris Bank, N.A.*,
    2014 WL 3725341 (D.D.C. July 29, 2014) ...........................................................5

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
    490 U.S. 477 (1989) .......................................................................................28, 37

*Rota-McLarty v. Santander Consumer USA, Inc.*,
    700 F.3d 690 (4th Cir. 2012) ......................................................................18, 28, 29

*Sec. Indus. Ass'n v. Connolly*,
    883 F.2d 1114 (1st Cir. 1989) .............................................................................35

*SG Avipro Fin. Ltd. v. Cameroon Airlines*,
    2005 WL 1353955 (S.D.N.Y. June 8, 2005) .......................................................21

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Stone v. Penn. Merch. Grp., Ltd.*,
    949 F. Supp. 316 (E.D. Pa. 1996) .......................................................22

*Stringfield v. GGNSC Tifton, LLC*,
    2012 WL 4584907 (M.D. Ga. Oct. 1, 2012)......................................22

*Sydnor v. Conseco Fin. Serv. Corp.*,
    252 F.3d 302 (4th Cir. 2001)..............................................................15

*Thyssen, Inc. v. Calypso Shipping Corp.*,
    310 F.3d 102 (2d Cir. 2002)...............................................................29

*U.S. Home Corp. v. Settlers Crossing, LLC*,
    2012 WL 5193835 (D. Md. Oct. 18, 2012) ......................................32

*United States v. Joshua*,
    607 F.3d 379 (4th Cir. 2010)..............................................................35

*United Steelworkers v. Am. Mfg. Co.*,
    363 U.S. 564 (1960)............................................................................25

*Wachovia Bank, N.A. v. Schmidt*,
    546 U.S. 303 (2006).............................................................................1

*In re Wade*,
    969 F.2d 241 (7th Cir. 1992)..............................................................31

*Wholesale Tape & Supply Co. v. iCode, Inc.*,
    2005 WL 3535148 (E.D. Tenn. Dec. 22, 2005).................................21

*Wickwire Gavin P.C. v. U.S. Postal Serv.*,
    356 F.3d 588 (4th Cir. 2004)..............................................................26

**Statutes and Rules**

9 U.S.C. § 4 ..............................................................................*passim*

9 U.S.C. § 16(a) ..........................................................................2, 3

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1332(d) .............................................................................1

28 U.S.C. § 1367(a) .............................................................................1

Fed. R. Civ. P. 11 ...............................................................................30

Fed. R. Civ. P. 54(b) ...................................................................*passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ...............................................................................................1

**Other Authorities**

Arbitration of Interstate Commercial Disputes: J. Hearings on S. 1005 and H.R. 646 Before the Subcomms. of the Comms. on the Judiciary (1924) .........35

S. Rep. No. 68-536 (1924) .................................................................35

# JURISDICTIONAL STATEMENT[1]

In this putative class action, plaintiff-appellee James Dillon asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and state statutes and common law.  JA26-110.[2]  The district court thus had jurisdiction under 28 U.S.C. §§ 1331 and 1367(a).  The district court also had jurisdiction under 28 U.S.C. § 1332(d):  Dillon seeks greater than $5 million in alleged damages for the putative class and at least one putative class member is a citizen of a state different from any defendant.  JA35.[3]

Dillon alleges that he obtained usurious loans from lenders, most of which are operated by Indian tribes.  JA28, 30, 54-59.  None of those lenders are parties to this case.  Instead, Dillon sued banks that he alleges were in the chain of

---

[1]    Plaintiff-appellee James Dillon has moved to dismiss this appeal for lack of appellate jurisdiction.  Dkt. No. 17.  On October 2, 2014, the Court deferred ruling on that motion pending briefing of the merits.  Dkt. No. 28.

[2]    The term "JA" refers to the joint appendix.  "DE" refers to the district court record.  And "Dkt. No." refers to the appellate record.

[3]    Specifically, Dillon alleges that he is a citizen of North Carolina.  JA29.  By contrast, defendant-appellant BMO Harris Bank, N.A., is a citizen of Illinois because it is a national banking association headquartered in that state.  JA30; *see also Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006).  Two of the other defendant banks are also citizens of states other than North Carolina: defendant-appellant Generations Federal Credit Union is a citizen of Texas and defendant-appellant Bay Cities Bank is a citizen of Florida.  JA30.  A fourth defendant, Four Oaks Bank & Trust ("Four Oaks"), which is not a party to this appeal, is a citizen of North Carolina.  *Id.*

1

intermediaries that effected funds transfers between Dillon's and his lenders' bank accounts. JA54-59.

Defendants-appellants BMO Harris Bank, N.A. ("BMO Harris"), Generations Federal Credit Union ("Generations"), and Bay Cities Bank ("Bay Cities") (collectively, "Defendants") twice moved the court below to enforce the arbitration provisions in Dillon's loan agreements with the third-party lenders. On March 10, 2014, the district court denied Defendants' initial motions because Dillon had objected to the absence of declarations authenticating the agreements. JA173-79. Accordingly, Defendants persuaded the third-party lenders or related entities to provide authenticating declarations, and then filed renewed motions to enforce those agreements. JA298-302, 315-20, 375-81. On July 7, 2014, the district court denied those renewed motions, holding that it would not reconsider its denial of the initial motions to enforce Dillon's arbitration agreements. JA430-37. On July 17, 2014, Defendants timely appealed the July 7 order. JA438-42.

This Court has jurisdiction over this appeal under Section 16(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a). It provides that "[a]n appeal may be taken from . . . an order . . . refusing" a motion to enforce an arbitration agreement. *Id.* § 16(a)(1)(A). The July 7, 2014 order denying Defendants' renewed motions to enforce Dillon's arbitration agreements is such an order. Although the district court denied those motions under the standard for motions for

reconsideration, that fact does not deprive this Court of jurisdiction. As the Supreme Court has held, under the "clear and unambiguous terms" of Section 16(a) of the FAA, "any litigant who asks" the court to enforce an arbitration agreement "is entitled to an immediate appeal from denial of that motion," regardless of the reason why the district court denied the motion. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009). Accordingly, even an express request for "reconsideration" of an earlier order denying a motion to compel arbitration "may be appealed separately" under Section 16(a). *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004).

## STATEMENT OF ISSUES

The FAA specifies that when a district court is considering a request for arbitration, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The district court denied Defendants' initial motions to enforce Dillon's arbitration agreements because he objected to Defendants' reliance on his allegations in the complaint incorporating those agreements by reference. Without denying the validity or the authenticity of the agreements that Defendants had submitted, Dillon argued that Defendants instead should have procured declarations from the third parties that could authenticate those agreements. Defendants then obtained such declarations and filed renewed motions to enforce Dillon's arbitration agreements. In response,

3

Dillon did not object to the arbitration agreements that BMO Harris and Generations submitted. And with respect to the two declarations authenticating separate agreements that Bay Cities submitted, Dillon labeled the declarations "dubious" but did not deny entering into those agreements. The district court nonetheless denied the renewed motions as procedurally barred, concluding that Defendants were not entitled to reconsideration of its order denying the initial motions, again without reaching the merits of the motions.

The first issue is whether the district court erred in subjecting the renewed motions to the heightened standard for reconsideration—*e.g.*, requiring proof of a "manifest injustice"—rather than addressing those motions on the merits.

The second issue is whether, even if the reconsideration standard were applicable, the district court erred in refusing to consider the renewed motions when Dillon does not deny entering into the arbitration agreements invoked by each Defendant, nine district courts have compelled arbitration in copycat cases filed by Dillon's counsel, and the tribal lenders could have invoked tribal sovereign immunity rather than comply with subpoenas seeking testimony confirming the authenticity of the agreements.

## STATEMENT OF THE CASE

### A.    Dillon's Counsel File A Wave Of Virtually Identical Putative Class Actions Across The Country, Including This Action.

This appeal arises from the only one of a dozen copycat putative class actions filed by Dillon's counsel in which the district court refused to enforce the plaintiff's arbitration agreements. Nine federal district courts have concluded that these cases must proceed in arbitration.[4] And in the two other cases, Dillon's counsel voluntarily dismissed each action before the court could rule.[5]

The complaint in this case was cut from the same pattern as the other cases. The plaintiff, Dillon, alleges that he used the Internet to borrow money from lenders—most operated by Indian tribes—on terms that he says violate his home state's usury law. JA54-59. But Dillon's counsel chose not to sue the lenders who made the loans and collected the challenged interest and finance charges. Instead,

---

[4]    *See Gunson v. BMO Harris Bank, N.A.*, --- F. Supp. 2d ----, 2014 WL 4472725 (S.D. Fla. Sept. 10, 2014); *Achey v. BMO Harris Bank, N.A.*, --- F. Supp. 2d ----, 2014 WL 4099139 (N.D. Ill. Aug. 19, 2014); *Booth v. BMO Harris Bank, N.A.*, 2014 WL 3952945 (E.D. Pa. Aug. 11, 2014); *Riley v. BMO Harris Bank, N.A.*, --- F. Supp. 2d ----, 2014 WL 3725341 (D.D.C. July 29, 2014); *Graham v. BMO Harris Bank, N.A.*, 2014 WL 4090548 (D. Conn. July 16, 2014); *Labajo v. First Int'l Bank & Trust*, 2014 WL 4090527 (C.D. Cal. July 9, 2014); *Moss v. BMO Harris Bank, N.A.*, --- F. Supp. 2d ---, 2014 WL 2565824 (E.D.N.Y. June 9, 2014); *Elder v. BMO Harris Bank, N.A.*, 2014 WL 1429334 (D. Md. Apr. 11, 2014), *appeal pending*, No. 14-1638 (4th Cir. filed June 30, 2014); *Gordon v. U.S. Bancorp*, No. 13-cv-3005 (D. Minn. Apr. 21, 2014) (DE 109-1).

[5]    *See* Notice of Voluntary Dismissal, *Parm v. BMO Harris Bank, N.A.*, No. 13-cv-3326 (N.D. Ga. Sept. 30, 2014); Notice of Voluntary Dismissal, *Hillick v. BMO Harris Bank, N.A.*, No. 5:13-CV-1222 (N.D.N.Y. Dec. 16, 2013).

5

Dillon's counsel has targeted banks that allegedly played a role in the sequence of funds transfers between Dillon's and his lenders' bank accounts using the Automated Clearing House ("ACH") network. JA54-59. That network is used to process millions of debit and credit transactions each day. JA40-41.[6]

Like the plaintiffs in virtually all of the other cases, Dillon purports to represent a putative class of residents of 13 states and the District of Columbia. JA59-62. The proposed class consists of borrowers whose bank accounts were debited via ACH transfer in connection with loans made by an undefined group of out-of-state payday lenders on terms that allegedly were unlawful under the law of the state of the borrower's residence. *Id.* Dillon asserts claims under RICO; North Carolina's usury, consumer-finance, and consumer-protection laws; and for money had and received, and unjust enrichment. JA62-104.

---

[6]     Specifically, Dillon alleges that BMO Harris processed four ACH transfers in connection with a loan that he had obtained from Great Plains Lending LLC. JA54, 305. Dillon alleges that Generations processed three ACH transfers in connection with a loan that he had obtained from Western Sky Financial LLC. JA58, 322. And Dillon alleges that Bay Cities processed seven ACH transfers in connection with loans he obtained from MNE Services, Inc. d/b/a USFastCash and Vin Capital LLC. JA55-56, 383, 386, 409. Dillon also sued a fourth bank, Four Oaks, that is not a party to this appeal. Dillon alleges that Four Oaks processed four ACH transfers in connection with a loan he obtained from Island Finance, LLC d/b/a White Hills Cash. JA57; DE 51.

**B.    The District Court Denies Defendants' Initial Motions To Enforce Dillon's Arbitration Agreements For Lack Of Evidence That They Were Authentic.**

Like many of the defendant banks in the copycat actions, BMO Harris, Generations, and Bay Cities moved to enforce the arbitration provisions in Dillon's loan agreements.[7]  JA111-16, 125-28, 137-40.  In support of their motions, BMO Harris, Generations, and Bay Cities attached and cited to those agreements.  *E.g.*, JA129-36.  Dillon had failed to attach those agreements to his complaint.  *See* JA26-110.  But Defendants noted that those agreements could be considered by the court because the agreements were incorporated by reference in the complaint and integral to Dillon's claims that the loans were usurious.  *E.g.*, DE 36, at 2-3. Defendants acknowledged that they were not signatories to the loan agreements between Dillon and his lenders.  *E.g.*, *id.* at 1-2.  But Defendants explained that the plain language of the arbitration agreements makes them third-party beneficiaries and that, in any event, the doctrine of equitable estoppel precludes Dillon from sidestepping those agreements by omitting the lenders from his complaint.  *E.g.*, *id.* at 10-18.

In opposition, Dillon contended principally that Defendants are not third-party beneficiaries and that the doctrine of equitable estoppel does not apply.  *E.g.*,

---

[7]    The fourth defendant in this action, Four Oaks, allegedly processed ACH transfers in connection with an agreement that did not include an arbitration provision and so is not a party to this appeal.

DE 70, at 8-20. Dillon also argued, among other things, that the tendered loan agreements constituted "inadmissible hearsay" because Defendants had not submitted declarations from the third parties attesting that the agreements were "authentic." *E.g.*, JA168. Because Dillon is the only participant in the action who was a signatory to the loan agreements, he was in the best position to know whether the loan agreements were genuine. But Dillon did not deny entering into the loan agreements; nor did he submit any evidence or testimony suggesting that the agreements were not genuine. *See*, *e.g.*, *id.* For that reason, Defendants contended that authenticating declarations were unnecessary. *E.g.*, JA172.

On March 10, 2014, the district court denied Defendants' arbitration motions. JA173-79. The court evaluated the motions under a "standard similar to a motion for summary judgment." JA175. In the court's view, Defendants had not "establish[ed] the existence of an agreement to arbitrate." JA173. The court concluded that Defendants needed declarations to authenticate the agreements unless Dillon affirmatively "admitted that the proffered loan agreements are in fact the loan agreements at issue"—which, in the court's view, he had not done. JA176. The court's order stated that the motions were "denied." JA179 (capitalization and boldface omitted). But the court did not indicate in any way that Defendants' arbitration defense was stricken or that Defendants would be barred from renewing

their requests for arbitration following further factual development regarding the authenticity of Dillon's arbitration agreements. *See id.*

### C. Defendants Obtain Declarations Authenticating Dillon's Arbitration Agreements And Renew Their Requests For Arbitration.

In light of the court's order, Defendants undertook to persuade the third parties, all of whom are outside Defendants' control, to agree to provide declarations authenticating Dillon's loan agreements.[8]  After obtaining these declarations, Defendants filed them along with renewed motions to enforce the arbitration provisions in Dillon's loan agreements.  JA298-302, 315-20, 375-81.[9]

Defendant BMO Harris further explained that the tribal lender for which it had allegedly processed ACH transfers, Great Plains Lending, previously had refused to provide a declaration and changed its mind only after the district court denied the initial arbitration motions.  JA298-302, 351-54, 358-61.  BMO Harris

---

[8]     Because the tribal lenders could invoke tribal sovereign immunity, those lenders likely could not be forced to comply with subpoenas. *See, e.g., Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1105 (8th Cir. 2012) ("[A] federal court's third-party subpoena in private civil litigation is a 'suit' that is subject to Indian tribal immunity.").

[9]     Specifically, BMO Harris submitted a declaration from an officer of Dillon's lender Great Plains Lending, LLC (JA303-14); Generations submitted an affidavit from an authorized representative of Dillon's lender Western Sky Financial, LLC (JA321-29); and Bay Cities submitted two declarations, one from an employee of a shared service provider for Dillon's lender USFastCash (JA382-406) and the other from an officer of an entity that processes payments for Dillon's lender Vin Capital LLC (JA407-18).

also explained that it would have been futile to attempt to force Great Plains Lending to provide a declaration with a subpoena. JA351-52.

In his responses to Defendants' renewed motions, Dillon argued that Defendants were barred from renewing their requests for arbitration under the standard applicable to motions for reconsideration. JA330-39, 340-43, 419-23. But he again did not deny that he had entered into the tendered loan agreements. *See id.* And he again submitted no evidence or testimony denying that those agreements were genuine. *See id.*

In fact, Dillon did not object at all to the agreements or the authenticating declarations that BMO Harris and Generations submitted in support of their motions. JA330-39, 340-43. With respect to the two declarations authenticating separate agreements that Bay Cities submitted, Dillon asserted that they were "dubious," but did not suggest that either declarant's testimony was incorrect. JA419-20.[10]

---

[10]    Dillon suggested that one declarant lacked personal knowledge to authenticate one of the agreements that Bay Cities had tendered on the ground that the declarant was employed by an entity that processes payments for the lender rather than the lender itself. JA419-20. But he did not articulate any reason why this meant that the declarant's testimony that he had personal knowledge should be rejected. *See id.* As to the other declaration, Dillon stated that the declarant's credibility was "inherently suspect" because of an action brought against the declarant's employer by the Federal Trade Commission. *Id.* But as noted above, Dillon did not assert that either declarant's testimony was incorrect. Nor did he move to strike the declarations.

**D.    The District Court Deems Defendants' Renewed Motions Procedurally Barred.**

On July 7, 2014, the district court denied Defendants' renewed motions to enforce Dillon's arbitration agreements. JA430-37. The court did not rule on the merits of the motions. Nor did it address the substance of the tendered loan agreements or the declarations that Defendants had submitted.

Instead, the court stated, for the first time, that its earlier order had denied Defendants' first motions with prejudice. JA432. The court explained that it was applying the standard for "motions to reconsider pursuant to Rule 54(b) of the Federal Rules of Civil Procedure" to the renewed motions because there had been no "invitation from the court" for Defendants to renew their motions and because "the defendants did not request discovery or time to develop evidence to authenticate the alleged agreements" in connection with their initial motions. JA431-33.

The court then held that Defendants had not met the standard for reconsideration because refusing to entertain the renewed arbitration motions would not be a "manifest injustice." JA435-36. The court stated that "whether there is a potential arbitration agreement is, as to the defendants, just a matter of chance and not a bargained-for right." JA435. The court also held that the declarations authenticating the agreements were not newly available evidence warranting reconsideration because Defendants had not proven that they could not

have obtained them earlier. JA433-34. The court acknowledged that BMO Harris was previously unable to "obtain that evidence voluntarily" from Great Plains Lending. *Id.* But the court concluded that BMO Harris should have sought to compel discovery from Great Plains. JA434-35. The court did not address BMO Harris's contention that such an attempt would have been futile because, as a tribal entity, Great Plains could have argued that it has sovereign immunity and thus has no obligation to respond to a civil subpoena issued by a federal district court. *See id.*; *see also* JA351-52.

On July 17, 2014, Defendants timely filed a notice of appeal from the district court's order denying their renewed requests for arbitration. JA438-42.

## SUMMARY OF ARGUMENT

Dillon's claims belong in arbitration. Nine separate federal district courts have concluded that copycat cases filed by Dillon's counsel must proceed in arbitration in accordance with the terms of those plaintiffs' agreements with third-party lenders. *See* page 5 n.4, *supra* (citing cases).

By contrast, in this case, the court below refused even to consider the merits of Defendants' requests to enforce Dillon's arbitration agreements. The court instead held that the motions were procedurally barred. But the sole reason why the court held that Defendants had forfeited the right to invoke arbitration was that they had previously filed arbitration motions. The court had denied those motions

because, although Dillon remained silent on whether the arbitration agreements that Defendants had submitted were genuine and his complaint repeatedly referenced them, he refused to stipulate that those agreements were authentic. In the court's view, Defendants' only option was to have obtained authenticating declarations from third parties and submitted them with their initial motions. The court's holding that Defendants' renewed motions—which were supported by undisputed evidence that Dillon had agreed to arbitrate—were improper requests for reconsideration is mistaken as a matter of law.

To begin with, the court below disregarded the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. That Act embodies a strong federal policy favoring arbitration, creating a heavy presumption against default or waiver of the right to arbitrate. And it instructs courts facing a dispute over the existence or formation of an arbitration agreement to resolve that dispute following factual development rather than foreclose arbitration altogether. Indeed, the FAA specifies that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. For that reason, courts routinely permit parties to file renewed arbitration motions supported by additional evidence when the initial arbitration motion foundered because of an evidentiary dispute. The plain language of the FAA and the overwhelming weight of authority applying

it thus confirm that the court below should have reached the merits of Defendants' renewed motions.

Indeed, the ruling below rests upon an erroneous application of the procedures for motions to enforce arbitration agreements under the FAA. The court below compared such motions procedurally to summary judgment motions. JA176. But the court failed to recognize a key difference between those two types of motions. If a summary judgment motion is denied because an invoked affirmative defense turns on a disputed factual question, that defense may still be raised at trial. By contrast, if an arbitration motion is denied because of an evidentiary dispute, the only way to raise that defense is in a renewed motion following further factual development. By refusing to consider the merits of Defendants' renewed motions unless Defendants could satisfy the stringent standard for motions for reconsideration, the district court barred Defendants' arbitration defense without ever considering it on the merits.

Moreover, even if it were appropriate to treat Defendants' renewed motions as motions for reconsideration, the court below abused its discretion in denying them. In balancing the equities, the court discounted the strong federal policy favoring arbitration on the mistaken assumption that it has less force when it is a non-signatory that is seeking to hold a plaintiff to his promise to arbitrate disputes. Binding Supreme Court precedent contradicts that premise. This error is all the

14

more problematic because Defendants' requests to enforce Dillon's arbitration agreements are strong on the merits.  Dillon has not denied entering into the arbitration agreements that Defendants invoked.  And every court to reach the arbitrability issue in the copycat cases filed by Dillon's counsel has rejected the substantive objections to arbitration that Dillon raised below.

Finally, BMO Harris in particular would have been entitled to reconsideration for the independent reason that its additional evidence from Dillon's lender was not available prior to the court's ruling on BMO Harris's initial motion to compel arbitration.  The district court acknowledged as much, but ruled that BMO Harris should have sought the court's assistance in compelling Dillon's lender to provide the evidence earlier.  In so ruling, the court erroneously failed to consider BMO Harris's uncontradicted showing that any such attempt would have been fruitless:  Because Dillon's lender could have argued that it enjoys tribal immunity, there is no reason to believe that it would have complied with a civil subpoena.

## STANDARD OF REVIEW

This Court "review[s] a district court's denial of a motion to compel arbitration *de novo*." *Sydnor v. Conseco Fin. Serv. Corp.*, 252 F.3d 302, 304-05 (4th Cir. 2001); *accord Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 602 (4th Cir. 2013). Similarly, "[t]his Court reviews *de novo* the district court's interpretation of a

statute" such as the FAA. *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1328 (4th Cir. 1995). This Court also reviews *de novo* a district court's conclusion that a defendant has waived its right to arbitrate. *See MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001).

This Court "ordinarily review[s] for abuse of discretion a district court's denial of a motion for reconsideration." *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 247 (4th Cir. 2012). But a "district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996); *see also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 393 (4th Cir. 2012). In addition, "[a] district court abuses its discretion when it fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of legal or factual misapprehensions respecting those factors." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 402-03 (4th Cir. 1998) (quotation marks omitted).

**ARGUMENT**

**I.    THE COURT BELOW ERRED BY REFUSING TO PERMIT DEFENDANTS TO RENEW THEIR MOTIONS TO ENFORCE DILLON'S ARBITRATION AGREEMENTS.**

    **A.    The FAA's Mandate That District Courts Resolve Challenges To The Existence Or Formation Of Arbitration Agreements Required The Court Below To Consider Defendants' Renewed Motions To Enforce Dillon's Arbitration Agreements.**

The district court denied Defendants' renewed motions to enforce Dillon's arbitration agreements on the ground that Defendants were improperly seeking reconsideration of the order denying their initial arbitration motions. That ruling is erroneous as a matter of law; any general presumption against successive motions must yield to Congress's contrary mandate in the FAA that district courts entertain them under these circumstances.

As the Supreme Court has explained, the FAA embodies an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see also*, *e.g.*, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) ("[T]he FAA was designed to promote arbitration."). Accordingly, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or"—as in this case—"an allegation of *waiver*, delay, or a like

17

defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasis added).[11]

The FAA also prescribes certain procedures to be followed when—as here— a party raises the possible existence of an arbitration agreement. Section 4 of the FAA specifies that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The plain language of the FAA thus confirms that when the parties dispute the formation or existence of an arbitration agreement and the district court cannot resolve that question on the record before it, the court should permit further factual development—including via trial, if necessary—rather than foreclose arbitration altogether, as the court below did here.

Numerous courts have confirmed this understanding of the FAA and allowed renewed motions to compel arbitration in order to address a prior dispute about the existence or authenticity of an arbitration agreement. As the Third Circuit has explained, when the "arbitrability" of the plaintiff's claims is either not "apparent on the face of the complaint" or the plaintiff "has come forward with enough evidence in response to the motion to compel arbitration to place the question in

---

[11]     *See also*, *e.g.*, *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 702 (4th Cir. 2012) ("in light of the federal policy favoring arbitration," default of the right to arbitrate is "not to be lightly inferred") (quotation marks omitted); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) ("The strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns.").

issue," the "motion to compel arbitration must be denied **pending further development of the factual record**." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774 (3d Cir. 2013) (emphasis added). Then, following a "restricted inquiry into factual issues," the district court "may entertain a renewed motion to compel arbitration." *Id.* at 774, 776 (quotation marks omitted).

The Tenth Circuit similarly has held that district courts may not foreclose arbitration altogether simply because the parties dispute the existence of an arbitration agreement. As the Tenth Circuit explained, "when parties dispute the making of an agreement to arbitrate," the "[o]ne thing the district court may never do"—as the court below in this case did—is to deny arbitration altogether on that basis. *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978-80 (10th Cir. 2014) (quotation marks and alteration omitted). That, the Tenth Circuit observed, is "like mixing apples and oranges, like saying someone who fails to win a summary judgment motion must necessarily lose after trial." *Id.* at 978. Instead, the district court must either hold a "trial of the unresolved factual questions" (*id.* at 978-79) or—if further proceedings reveal that there is no genuine issue of fact (as is the case here)—rule on the merits of the arbitration motion.

For these reasons, district courts across the country routinely permit—and grant—renewed motions to compel arbitration once evidentiary disputes over the formation or existence of the arbitration agreement have been fully resolved. For

example, in one recent case, the court denied the defendant's initial motion to compel arbitration "because neither party had submitted a copy of Plaintiff's online loan application." *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, 2014 WL 1868787, at *1 & n.1 (N.D. Cal. May 7, 2014). The court permitted the defendant to renew its request for arbitration supported by additional evidence, including a copy of the loan agreement, and then granted the defendant's renewed motion on the merits. *Id.*

In another recent case, the district court denied the defendant's initial motion to compel arbitration because the tendered loan agreement was not signed by the relevant party. *Goldberg v. C.B. Richard Ellis, Inc.*, 2012 WL 6522741, at *2 (D.S.C. Dec. 14, 2012). The court then permitted the defendant to renew its motion—and granted it—once the defendant dispelled any dispute over the existence of an arbitration agreement by finding and submitting a signed copy of the agreement with its renewed request for arbitration. *Id.*

In still another case, the district court—like the court below in this case—denied the defendant's initial motion to compel arbitration because, in that court's view, the defendant had "failed to show that there is an agreement to arbitrate." *Quazilbash v. Wells Fargo & Co.*, 2010 WL 1643778, at *2 (N.D. Okla. Apr. 22, 2010). But unlike the court below, the court in *Quazilbash* then allowed the defendant to renew its request for arbitration, explaining that if a defendant has

"failed to show that there is an agreement to arbitrate between it and the plaintiff" based "on the current record," it "may file a new motion to compel arbitration" supported by "additional evidence relevant to whether an agreement to arbitrate exists." *Id.*

These decisions represent just a few of many in which a court permitted a renewed motion to compel arbitration after denying the initial motion because of a dispute over the existence or authenticity of the arbitration agreement. *See*, *e.g.*, *Great Lakes Reinsurance (UK) PLC v. Sunset Harbour Marina, Inc.*, 2012 WL 6195149, at *2 & n.4 (S.D. Fla. Dec. 12, 2012) (granting third motion to compel arbitration once the defendants established that the plaintiff's insured was individually bound to the arbitration agreement); *Newark Bay Cogeneration P'ship, LP v. ETS Power Grp.*, 2012 WL 4504475, at *5 (D.N.J. Sept. 28, 2012) (granting renewed motion to compel arbitration once the parties engaged in discovery related to the issue of contract formation); *Lucas v. Hertz Corp*., 875 F. Supp. 2d 991, 997 n.6 (N.D. Cal. 2012) (same after movant resolved the "evidentiary problems" with its first motion); *Griffin v. Yellow Transp., Inc.*, 2007 WL 3120419, at *2 (D. Kan. Oct. 22, 2007) (same after discovery on issues of contract formation); *Wholesale Tape & Supply Co. v. iCode, Inc.*, 2005 WL 3535148, at *2 (E.D. Tenn. Dec. 22, 2005) (granting third motion to compel arbitration once the defendant demonstrated that "the conditions precedent to arbitration" had been met); *SG*

*Avipro Fin. Ltd. v. Cameroon Airlines*, 2005 WL 1353955, at *1-*2 (S.D.N.Y. June 8, 2005) (granting renewed motion once petitioner submitted uncontroverted evidence that the arbitration agreement was not a forgery); *Stone v. Penn. Merch. Grp., Ltd.*, 949 F. Supp. 316, 318-19 (E.D. Pa. 1996) (same once the defendant supplemented the previously "insufficient" record by "submit[ing] additional materials in support of its motion").

Still other courts, while ultimately denying a renewed motion to compel arbitration, have done so on the merits of the renewed motion, rather than by ruling that the movant was foreclosed from renewing its request for arbitration or by treating the renewed motion as an improper motion for reconsideration. *See*, *e.g.*, *Stringfield v. GGNSC Tifton, LLC*, 2012 WL 4584907, at *2 (M.D. Ga. Oct. 1, 2012) (permitting defendant to submit renewed motion to compel arbitration following discovery, but ultimately denying motion); *Creighton v. Blockbuster Inc.*, 2007 WL 1560626, at *1 (D. Or. May 25, 2007) (same after earlier motion was denied because of a factual issue over whether "plaintiff altered the arbitration provision"); *Golden Eagle Canada Ltd. v. S.S. Marilia*, 1985 WL 5091, at *1 (S.D.N.Y. Dec. 19, 1985) (same after first motion was denied because defendants did not establish a "legal and factual basis" for binding the non-signatory to the arbitration provision).

Defendants are aware of no contrary decisions refusing to consider a renewed arbitration motion supported by additional evidence of the existence or formation of the arbitration agreement after an earlier motion was denied because of a dispute over that issue. The district court did not cite any such decision. *See* JA430-37. In support of his bid to dismiss this appeal, Dillon has purported to identify one such case: *Cozza v. Network Associates, Inc.*, 362 F.3d 12 (1st Cir. 2004). Dkt. No. 22, at 5. But in that case, the district court denied the initial motion to compel arbitration ***on the merits***, ruling that the claims were outside the scope of the parties' agreement to arbitrate. *Cozza*, 362 F.3d at 13-14. Thus, in contrast to this case and all of the cases cited above, in *Cozza* there was no factual dispute over the existence or authenticity of the arbitration agreement that needed to be addressed before the court could reach the merits of the request for arbitration.

Defendants here followed the procedure contemplated by the FAA and employed by numerous courts: Once they obtained additional evidence confirming the authenticity of Dillon's loan agreements, Defendants filed renewed arbitration motions. The district court purported to distinguish the cases Defendants have cited on the ground that the courts in those cases invited the renewed motions. JA431-32. But it is hardly surprising that district courts often expressly invite parties to re-file arbitration motions after further evidentiary development on the

existence or formation of an arbitration agreement, because that is the procedure called for by the FAA and the case law. *See Ferrellgas Partners*, 748 F.3d at 978-80; *Guidotti*, 716 F.3d at 774.

In sum, in light of the plain language of the FAA and the overwhelming precedent following its command, the court below erred as a matter of law in deeming Defendants' renewed motions to enforce Dillon's arbitration agreements to be procedurally barred requests for reconsideration. The court instead should have considered the additional evidence of the existence of Dillon's arbitration agreements and ruled on whether those agreements must be enforced.

**B.    The District Court's Justifications For Subjecting The Renewed Arbitration Motions To Heightened Scrutiny Fail As A Matter Of Law.**

**1.    Federal Rule of Civil Procedure 54(b) does not trump the FAA's requirement that courts entertain renewed arbitration motions once evidentiary questions about the existence or formation of the arbitration agreement have been answered.**

The district court assumed that Rule 54(b) requires imposing strict limits on a renewed motion to enforce an arbitration agreement. JA430-31, 436-37. But that rule states merely that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Nothing in the rule trumps the FAA's command

24

to resolve questions of contract formation, even if that process requires more than simply dealing with an initial motion to compel arbitration.

Moreover, the district court's view of Rule 54(b) is irreconcilable with Fourth Circuit precedent. As this Court has explained, "doctrines such as law of the case" "do[] not and cannot limit the power of a court to reconsider an earlier ruling" under Rule 54(b). *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). That is because "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Id.* Although "that obligation may be tempered at times by concerns of finality and judicial economy," with respect to certain issues, such as "subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority," the obligation to reach the correct result is "great[] and . . . unflagging." *Id.*

The same principle applies here. Courts lack "adjudicatory authority" (*Am. Canoe*, 326 F.3d at 515) over arbitrable claims when, as here, a party has invoked arbitration.[12] Yet by refusing to consider the merits of Defendants' renewed

---

[12]    The Supreme Court has warned that, in considering a request for arbitration, "a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also, e.g.*, *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) ("The courts, therefore, have no business weighing the merits of [a] grievance [subject to arbitration].").

arbitration motions, the court below overlooked the risk that it would proceed to adjudicate arbitrable claims.

In any event, Rule 54(b) itself does not categorically restrict successive motions in all other circumstances, as the court below assumed. Indeed, the text of the rule says nothing at all about the standard for revisiting a prior determination—for example, one to deny summary judgment. In fact, it is common in this Circuit for parties to be permitted to renew their motions for summary judgment—to take only one example—after further development of the factual record.[13] This common practice cannot be squared with the district court's view that Rule 54(b) permits renewed motions only in "unusual situations." JA430.

---

[13] *See*, *e.g.*, *Antonio v. SSA Sec., Inc.*, 749 F.3d 227, 231 (4th Cir. 2014) (noting that district court allowed some claims to proceed after first motion for summary judgment but "ultimately granted summary judgment in [defendant's] favor on these claims following [defendant's] renewed motion for summary judgment"); *Wickwire Gavin P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 590 (4th Cir. 2004) (noting that district court had denied initial motions for summary judgment "pending completion of discovery" and that both parties thereafter "renewed their motions for summary judgment"); *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701, 707 (4th Cir. 1986) (where summary judgment was inappropriate on current record, it "would be appropriate" for parties to engage in "[f]urther factual development" and either submit additional materials "in support of a renewed motion for summary judgment" or proceed to trial); *Cole v. Cole*, 633 F.2d 1083, 1090 n.8 (4th Cir. 1980) (reversing district court's grant of summary judgment to defendant because "the present record [was] insufficient to sustain" it, but explaining that the reversal was "without prejudice to [defendant's] right to renew the motion for summary judgment after an expansion of the record and after adequate opportunity for discovery").

In sum, Rule 54(b) does not—and cannot—displace the FAA's requirement that district courts decide whether to enforce arbitration agreements, even if a renewed arbitration motion is necessary to clear up a dispute regarding "the making of the arbitration agreement."  9 U.S.C. § 4.

### 2.    Parties cannot be required to prove the existence of the arbitration agreement at the outset of the case.

The district court also suggested that Defendants' renewed arbitration motions were "inconsistent with the general rule that parties should present all of their arguments to the Court in the first instance."  JA432.  But that general rule must yield to the FAA, which does not require a party invoking arbitration to prove the existence of the arbitration agreement in its first motion.

To the contrary, the FAA contemplates that, in some cases, the initial motion will ***not*** lay to rest all doubts regarding the existence or formation of the arbitration agreement being invoked.  That is why the FAA authorizes district courts to permit additional factual development—and even directs them to convene a summary "trial"—regarding "the making of the arbitration agreement."  9 U.S.C. § 4.

Indeed, the Tenth Circuit has rejected the analogous argument that "the FAA's trial guarantee doesn't apply unless and until the party moving for arbitration has first proven the existence of an agreement to arbitrate."  *Ferrellgas Partners*, 748 F.3d at 979.  As the Tenth Circuit put it, such an approach would "invite . . . nonsense."  *Id.* at 980.  Requiring proof of the existence of the

agreement at the outset would render pointless the "statutory language directing a trial '[i]f the making of the arbitration agreement [is] . . . in issue.'" *Id.* at 980 (quoting 9 U.S.C. § 4).

In addition, the district court's reliance on the general notion that renewed motions are disfavored cannot be squared with the FAA's objective of easing the process of invoking arbitration agreements. As the Supreme Court has explained, "Congress's clear intent, in the [FAA], [was] to move the parties to an arbitrable dispute out of court and into arbitration as ***quickly and easily as possible***." *Moses H. Cone*, 460 U.S. at 22 (emphasis added). Courts therefore seek to avoid imposing "preliminary litigating hurdle[s]" on motions to enforce arbitration agreements. *Am. Express*, 133 S. Ct. at 2312. The district court's view that the initial arbitration motions were Defendants' only opportunity to invoke arbitration would impose such a "hurdle." Under that view, before a party could move to compel arbitration, it would have to assemble every conceivable iota of evidence supporting arbitration and to exhaust all possible sources of discovery, regardless of expense or the possibility that scorched-earth litigation is unnecessary—even when, as here, the plaintiff's claims presume the existence of the agreements that include the arbitration provisions.

The district court's approach is also inconsistent with the FAA's strong presumption against "default" (*Rota-McLarty v. Santander Consumer USA, Inc.*,

700 F.3d 690, 702 (4th Cir. 2012)) or "waiver" (*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996)) of the right to arbitrate.[14]  The court effectively foreclosed Defendants from invoking arbitration because their initial motions were filed too early—before they had authenticating declarations from third parties.  But in the comparable situation when a party invokes arbitration too late in the litigation process, courts apply a "heavy" presumption that the right to arbitrate has not been lost.  *Rota-McLarty*, 700 F.3d at 702; *Am. Recovery*, 96 F.3d at 95.  An equally strong presumption that a party has not lost the ability to invoke arbitration by moving too early also should apply.

The district court afforded no such presumption to Defendants here.  Instead, by subjecting Defendants to the heightened standard for reconsideration motions, the district court applied the opposite presumption—assuming that Defendants had defaulted on or waived the right to invoke arbitration unless they could show a

---

[14]     *Accord*, *e.g.*, *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421-22 (5th Cir. 2014) ("[T]here is a strong presumption against finding a waiver of arbitration.") (quotation marks omitted); *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013) ("any party arguing waiver of arbitration bears a heavy burden of proof") (quotation marks omitted); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) ("The strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns."); *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 104-05 (2d Cir. 2002) ("waiver of the right to arbitration is not to be lightly inferred") (quotation marks omitted).

"strongly convincing" reason why they had not. JA436 (quotation marks omitted). That was mistaken as a matter of law.

### 3. Defendants did not act unfairly or abusively by renewing their requests for arbitration.

The district court also expressed concern about possible strategic behavior and the purported specter of an endless series of arbitration motions. JA436-37. But, even if those concerns were valid in particular circumstances not presented here, they cannot overcome the FAA's command that district courts entertain a renewed arbitration motion when the initial motion was denied because of a dispute regarding the existence or formation of the arbitration agreement.

Indeed, the Supreme Court has explained that analogous concerns about a "long parade of horribles," including "frivolous" serial arbitration motions and appeals, cannot "surmount the plain language" of the FAA. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009). As the Court explained, lower courts already have means to remedy the problem should there be actual abuses—unlike here—of endless or frivolous requests for arbitration. *See id.* (citing, *e.g.*, Fed. R. Civ. P. 11). There is no need to distort the FAA's requirements to deter such hypothetical abuses.

Moreover, ***this case*** undeniably involves no such abuses. Defendants have not sought "endless opportunities to convince a court to compel arbitration." JA436. They simply made one set of renewed motions to address an evidentiary

30

issue raised by the court below—using the method endorsed by numerous other courts—so that the court below could rule *for the first time* on whether Dillon's claims are arbitrable.[15]

Nor have Defendants engaged in gamesmanship. Defendants' renewed motions neither sought to "re-argu[e] questions that have already been decided" nor "construct[ed] a new argument to support a position previously rejected by the court[.]" JA431 (quotation marks omitted). For example, Defendants did not ask the district court to reconsider its previous ruling that Dillon's loan agreements could not be considered unless they were authenticated, even though they were incorporated by reference in the complaint.[16] *See* JA162-63, 170, 172. Instead, after considerable effort, Defendants obtained the declarations from third parties over whom Defendants have no control and presented them to the court, as the court's prior order appeared to be requesting.

---

[15]    Thus, the district court also was incorrect to characterize Defendants' renewed motions as motions seeking "a second bite at the apple" (JA431), because the court had not (and still has not) ruled on the merits of Defendants' requests for arbitration.

[16]    Numerous courts have not insisted upon such declarations, instead concluding that documents incorporated by reference in the complaint are part of the pleadings by operation of Federal Rule of Civil Procedure 10(c). *See, e.g.*, *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994); *In re Wade*, 969 F.2d 241, 249 & n.12 (7th Cir. 1992); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *Norfolk Fed'n of Bus. Dists. v. Dep't of Hous. & Urban Dev.*, 932 F. Supp. 730, 736 (E.D. Va. 1996).

In sum, none of the district court's reasons for imposing special restrictions on Defendants' right to submit renewed arbitration motions withstands scrutiny. None warrants disregarding the FAA's mandate that those motions—which have cleared up the evidentiary issue that led to the denial of the initial motions—be considered on the merits.

## II.    EVEN UNDER THE STANDARD APPLICABLE TO MOTIONS FOR RECONSIDERATION, THE DISTRICT COURT ERRED IN REFUSING TO ENTERTAIN THE RENEWED MOTIONS.

Even if the district court was right to treat the renewed motions to compel arbitration as motions for reconsideration, it abused its discretion in refusing to grant them.

This Court has held that district courts should grant motions under Rule 59(e) to alter or amend final judgments in at least three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). The same reasons generally warrant granting motions under Rule 54(b) to reconsider interlocutory orders. *See*, *e.g.*, *LaFleur v. Dollar Tree Stores, Inc.*, --- F. Supp. 2d ----, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014); *U.S. Home Corp. v. Settlers Crossing, LLC*, 2012 WL 5193835, at *2 (D. Md. Oct. 18, 2012); *Galeas*

*v. FNU Walrath*, 2012 WL 664927, at *1 (W.D.N.C. Feb. 29, 2012); *Akeva, L.L.C.*

*v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 566 (M.D.N.C. 2005).

This Court has emphasized, however, that "[m]otions for reconsideration of

interlocutory orders are not subject to the strict standards applicable to motions for

reconsideration of a final judgment." *Am. Canoe*, 326 F.3d at 514.    Thus,

reconsideration under Rule 54(b) should be granted more liberally than

reconsideration of final judgments under Rules 59 or 60. *See id.*[17]  And as noted

above (at page 25), that is especially so when the issue that is potentially being

reconsidered goes to "the legitimacy of a court's adjudicatory authority" over the

action, as is true here. *Am. Canoe*, 326 F.3d at 515.

### A.    Refusing To Consider Defendants' Renewed Motions To Enforce Dillon's Arbitration Agreements Would Result In A Manifest Injustice.

The district court abused its discretion in concluding that depriving

Defendants of a ruling on the merits of their arbitration defense would not result in

a "manifest injustice." JA435.  In making that determination, the court "fail[ed] to

take relevant factors" into account—which is the hallmark of an abuse of

---

[17]    *See also*, *e.g.*, *Gen. Assurance of Am., Inc. v. Overby-Seawell Co.*, 893 F. Supp. 2d 761, 769-70 (E.D. Va. 2012) (party making a "reconsideration request" under Rule 54(b) "is not required to make a showing of extraordinary circumstances as would be required under Rules 59(e) and 60(b)(6)") (internal quotation marks omitted); *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (same).

discretion.  *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 402-03 (4th Cir. 1998) (internal quotation marks omitted).

***First***, the district court improperly discounted the strong federal policy favoring arbitration and disfavoring waiver of the right to invoke arbitration.  The district court asserted that the FAA's policies "are relevant and have been considered."  JA436.  But the court also stated that, because Defendants are not signatories of the arbitration agreements they are invoking, "whether there is a potential arbitration agreement is, as to the defendants, just a matter of chance and not a bargained-for right."  JA435.

The court's apparent assumption that Defendants' status as nonsignatories makes their request to enforce Dillon's arbitration agreements less important as a matter of federal policy is mistaken.  As the Supreme Court has made clear, the FAA mandates enforcement of arbitration agreements not "only for disputes between parties to a written arbitration agreement," but whenever "the claims are 'referable to arbitration under an agreement in writing.'"  *Arthur Andersen*, 556 U.S. at 631.  Thus, "[i]f a written arbitration provision is made enforceable against (or for the benefit of) a ***third party*** under state contract law"—as the courts have concluded in the copycat actions filed by Dillon's counsel—"the statute's terms are fulfilled" only by enforcement of that agreement.  *Id.* (emphasis added).  And in any event, even if Defendants, as third parties, are not being deprived of a right to

arbitration that they "bargained[ ]for" with Dillon (JA435), Dillon is being allowed to evade his contractual promise to arbitrate. The FAA's policies favoring arbitration are no less offended by giving a party access to the courts in breach of an arbitration agreement when a third-party beneficiary of the agreement is the one haled into court.[18]

Moreover, in confining its analysis to the relationship between the parties, the district court overlooked the public interest in enforcing arbitration agreements. An important reason that Congress enacted the FAA was to provide "therapy for the ailment of the crowded docket." *Sec. Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1116 (1st Cir. 1989).[19] To be sure, this action would continue even if BMO

---

[18]    The district court's misunderstanding of the FAA was legal error. *See*, *e.g.*, *Broughman v. Carver*, 624 F.3d 670, 674 (4th Cir. 2010) (interpretation of a statute is "'a quintessential question of law'") (quoting *United States v. Joshua*, 607 F.3d 379, 382 (4th Cir. 2010)); *accord Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471 (4th Cir. 2011). And because the court's application of the manifest injustice factor was based on this "error of law," the court "by definition" abused its discretion. *Koon*, 518 U.S. at 100.

[19]    The legislative history of the FAA bears out Congress's focus on relieving docket congestion. *See* Arbitration of Interstate Commercial Disputes: J. Hearings on S. 1005 and H.R. 646 Before the Subcomms. of the Comms. on the Judiciary, 68th Cong. 7 (1924) (statement of Charles L. Bernheimer) (arbitration "eliminates the law's delay by relieving our courts"); *id.* at 21 (letter from Herbert Hoover) (FAA was "urgent[ly] need[ed]" because the "clogging of the courts is such that the delays amount to a virtual denial of justice"); *id.* at 26 (statement of Alexander Rose) (describing the need for arbitration to "clear[] up this congestion" in the courts); *id.* at 34-35 (brief submitted by Julius H. Cohen) ("great congestion of the court calendars" is one of "[t]he evils" for which the FAA is needed); S. Rep. No. 68-536, at 3 (1924) (FAA would relieve "congested calendars" of the courts).

Harris's, Generations's, and Bay Cities's requests for arbitration were granted. Another Defendant, Four Oaks, which is not a party to this appeal, has not invoked arbitration. But if BMO Harris, Generations, and Bay Cities were foreclosed from invoking arbitration, this action would continue as an unwieldy, multi-party case, with four times the motions practice and much longer hearings. Judicial resources taken up by this action cannot be devoted to other actions and parties.

***Second***, the district court failed to consider the merits of Defendants' requests for arbitration. As noted above, Dillon does not deny entering into the tendered loan agreements containing arbitration clauses. *See* page 8, *supra*. Moreover, all of the district courts that have ruled on the issue in the copycat cases filed by Dillon's counsel—nine in all—have held that the claims must proceed in arbitration. *See* page 5, *supra*. Those cases all involve virtually identical multi-state putative classes seeking identical relief. *See* page 6, *supra*. It would be a manifest injustice to allow Dillon's case to continue to consume judicial resources and to deprive Defendants of the cost savings and expedition of arbitration when Dillon, like the plaintiffs in the other cases, has agreed to arbitrate his claims.

Nor would Dillon be prejudiced by enforcement of his arbitration agreements. There is nothing inappropriate about considering a newly available declaration on a renewed motion. *See Passmore v. Discover Bank*, 2011 WL 5086431, at *5 (N.D. Ohio Oct. 26, 2011) (accepting "properly authenticated"

36

arbitration agreement on second motion to compel arbitration). And as the Supreme Court has reiterated, "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)); *see also*, *e.g.*, *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989) ("suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants" is "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes").

**B.    The Court Below Disregarded BMO's Showing That Its New Evidence Of Dillon's Arbitration Agreement Was Previously Unavailable.**

BMO Harris had demonstrated that reconsideration of the denial of its initial arbitration motion would have been appropriate for a second, independent reason: the new evidence it had submitted was previously unavailable because its source, Dillon's lender, had refused to provide it earlier. *See* JA298-302, 351-54, 358-61. The submission of previously unavailable evidence is a ground for reconsideration. *See Hutchinson*, 994 F.2d at 1081; *Akeva*, 385 F. Supp. 2d at 566. One court faced with similar circumstances has rightly concluded that a "properly authenticated"

arbitration agreement constitutes "new evidence" sufficient to "reopen [an] interlocutory matter[] for reconsideration" when a previous motion to compel arbitration was denied because the agreement was "unauthenticated." *Passmore*, 2011 WL 5086431, at *5.

The district court conceded that BMO Harris "could not obtain . . . voluntarily" from the third-party lender the testimony needed to authenticate the loan agreement containing the relevant arbitration clause. JA434. But the court held that BMO Harris should have instituted legal proceedings to compel the lender to provide that evidence before the court had ruled on BMO Harris's first motion to compel arbitration. *Id.* In so holding, the district court ignored BMO Harris's showing that it would have been infeasible—and almost certainly futile—to pursue that course of action. As BMO Harris explained below, Dillon's lender, Great Plains Lending, could invoke tribal immunity and refuse to respond to a subpoena.[20] *See*, *e.g.*, *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1105 (8th Cir. 2012) ("[A] federal court's third-party subpoena in private civil litigation is a 'suit' that is subject to Indian tribal immunity."); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) ("[S]overeign immunity does protect tribes against the enforcement of . . . non-party civil subpoenas."). As a

---

[20]     Great Plains Lending is a "lender authorized by the laws of the Otoe-Missouria Tribe of Indians." JA304.

matter of law, the duty to exercise due diligence does not encompass requiring a party to undertake futile gestures.

Moreover, BMO Harris's approach was more efficient. When the lender refused to provide a declaration in connection with the initial motion to compel arbitration, BMO Harris sought in good faith to secure a ruling as a matter of law based on Dillon's incorporation in the complaint of the loan agreement containing an arbitration provision. After the district court ruled that a declaration was indispensable, BMO Harris was able to persuade the lender to provide one voluntarily. *See* page 9, *supra*. By contrast, under the district court's approach, BMO Harris would have had to move for a stay of the briefing of the initial arbitration motion, subpoena the lender, and pursue collateral litigation in a likely futile attempt to enforce that subpoena—possibly in both federal district and tribal court. That approach would have led to considerable delay and consumed the resources of the parties and potentially multiple courts.[21] And it also would have

---

[21]    Indeed, the difficulty of attempting to overcome the lender's invocation of tribal sovereign immunity is underscored by the Second Circuit's recent decision in *Otoe-Missouria Tribe of Indians v. New York State Department of Financial Services*, --- F.3d ----, 2014 WL 4900363 (2d Cir. Oct. 1, 2014). In that case, various tribes are seeking an injunction under the Indian Commerce Clause against efforts by New York regulators to halt the making of online loans. *Id.* at *1-*3. The Second Circuit stated that the tribe "may ultimately prevail" in its suit, and observed that "New York's legal theories . . . rest on uncertain factual premises." *Id.* at *9 n.6, 11. But the court affirmed the denial of a preliminary injunction because difficult "[f]actual questions . . . pervade every step of the analysis" and

meant forgoing the possibility of obtaining an order compelling arbitration as a matter of law without the need for additional evidentiary support. That approach cannot be squared with the FAA's purpose of "mov[ing] the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22.

## CONCLUSION

The Court should vacate the district court's order denying Defendants' renewed motions to enforce Dillon's arbitration agreements and remand the case for further proceedings, so that arbitration may be compelled pursuant to those agreements.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request oral argument. This appeal raises important issues of first impression in this Circuit about whether district courts may foreclose entirely a defendant's ability to invoke arbitration because of an earlier dispute as to the existence or authenticity of an arbitration agreement. Oral argument will enable the parties to address those issues adequately and respond to any questions or concerns that the Court may have.

---

the record remained "murky." *Id.* at *7, *11. The court's ruling thus confirms that if BMO Harris or the other Defendants in this case had subpoenaed the tribal lenders, any attempts to enforce those subpoenas likely would have been futile and may have required extremely expensive collateral litigation.

Dated:  October 22, 2014                    Respectfully submitted,

                                            MAYER BROWN LLP


*/s/ Leslie Sara Hyman*                     */s/ Kevin Ranlett*
Eric A. Pullen                              Kevin Ranlett
Leslie Sara Hyman                           MAYER BROWN LLP
Etan Tepperman                              1999 K Street, N.W.
PULMAN, CAPPUCCIO,                          Washington, D.C. 20006
PULLEN, BENSON & JONES, LLP                 Telephone: (202) 263-3000
2161 NW Military Highway, Suite 400         Facsimile: (202) 263-3300
San Antonio, TX 78213
Telephone: (210) 222-9494                   Lucia Nale
Facsimile: (210) 892-1610                   Debra Bogo-Ernst
epullen@pulmanlaw.com                       MAYER BROWN LLP
lhyman@pulmanlaw.com                        71 South Wacker Drive
etepperman@pulmanlaw.com                    Chicago, IL 60606
                                            Telephone: (312) 782-0600
Reid C. Adams, Jr.                          Facsimile: (312) 701-7711
Garth A. Gersten
Jonathan R. Reich                           Mary K. Mandeville
WOMBLE CARLYLE SANDRIDGE &                  ALEXANDER RICKS PLLC
RICE, LLP                                   2901 Coltsgate Road, Suite 202
One West Fourth Street                      Charlotte, N.C. 28211
Winston-Salem, NC 27101                     Telephone:  (704) 200-2635
Telephone: (336) 721-3600                   Facsimile:  (704) 365-3676
Facsimile: (336) 721-3660
cadams@wcsr.com                             *Attorneys for Defendant-Appellant BMO*
ggarth@wscr.com                             *Harris Bank, N.A.*
jreich@wscr.com

                                            BRYAN CAVE LLP
*Attorneys for Defendant-Appellant*
*Generations Federal Credit Union*          */s/ Eric Rieder*
                                            Eric Rieder
                                            1290 Avenue of the Americas, 35th
                                            Floor
                                            New York, NY 10104
                                            Phone: (212) 541-2057
                                            erieder@bryancave.com

Michael P. Carey
1201 W. Peachtree St., N.W.
Suite 1400A
Atlanta, Georgia 30309
Phone: (404) 572-6863
Fax: (404) 420-0863
michael.carey@bryancave.com

Mark Vasco
One Wells Fargo Center
302 S. College Street, Suite 3400
Charlotte, NC 28202
Phone: (704) 749-8930
Fax: (704) 749-8990
mark.vasco@bryancave.com

*Attorneys for Defendant-Appellant Bay Cities Bank*

### UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No.  14-1728       Caption:   James Dillon v. BMO Harris Bank, N.A., et al.

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a)(7)(B) because:

☒       this brief contains  9792  [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐       this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  **Typeface and Type Style Requirements:**  A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒       this brief has been prepared in a proportionally spaced typeface using  Microsoft Word 2007  [*identify word processing program*] in  14-point Times New Roman  [*identify font size and type style*]; **or**

☐       this brief has been prepared in a monospaced spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

/s/ Kevin Ranlett

Attorney for  Defendant-Appellant BMO Harris Bank, N.A.

Dated:  October 22, 2014

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of October, 2014, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ *Kevin Ranlett*
Kevin Ranlett